**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITY OF PUYALLUP, | No. 54474-1-II |
| Appellant, | |
| v. | |
| PIERCE COUNTY, a Washington governmental unit; KNUTSON FARMS, INC.; and RUNNING BEAR DEVELOPMENT PARTNERS, LLC, | ORDER GRANTING MOTION FOR RECONSIDERATION IN PART AND AMENDING OPINION |
| Respondents. | |

Appellant, City of Puyallup, moves for reconsideration of the Court's December 14, 2021 published opinion. After consideration, the Court grants the motion in part and amends the opinion as follows:

Footnote 2 on page 7, stating:

> Puyallup also argues that the MDNS is void because this court held the County violated SEPA. Br. of Appellant at 12-14. However, the opinion of this court is narrower than Puyallup asserts. In *Pierce County*, this court ruled that Puyallup had jurisdiction to assume lead agency status after the County issued an MDNS. *See* 8 Wn. App. 2d at 351-52. The record and this court's prior decision do not support Puyallup's claims that the County violated SEPA.

is deleted, and replaced with the following language:

> The opinion of this court is narrow. In *Pierce County*, this court ruled that Puyallup has jurisdiction to assume lead agency status after the County issued an MDNS, which rendered the MDNS void. *See* 8 Wn. App. 2d at 351-52. But the court did not opine that the County's SEPA review leading to the MDNS violated SEPA.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

54474-1-II

Accordingly, it is

SO ORDERED.

_____
Veljacic, J.

We concur:

_____
Glasgow, C.J.

_____
Cruser, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITY OF PUYALLUP, | No. 54474-1-II |
| Appellant, | |
| v. | |
| PIERCE COUNTY, a Washington governmental unit; KNUTSON FARMS, INC.; and RUNNING BEAR DEVELOPMENT PARTNERS, LLC, | PUBLISHED OPINION |
| Respondents. | |

VELJACIC, J. — Pierce County issued a mitigated determination of nonsignificance (MDNS) under the State Environmental Policy Act (SEPA) for a warehouse distribution project bordering the City of Puyallup. Puyallup attempted to assume lead agency status so it could issue a determination of significance (DS) and prepare an environmental impact statement (EIS). The County refused to accept Puyallup's jurisdiction, and Puyallup sued. In *City of Puyallup v. Pierce County*, 8 Wn. App. 2d 323, 326-27, 438 P.3d 174 (2019), this court held that Puyallup had jurisdiction under SEPA regulation WAC 197-11-948, to assume lead agency status, issue a DS, and complete an EIS. On remand, the superior court adopted the County's proposed order and ruled that this court's opinion, consistent with WAC 197-11-948, rendered decisions that were based on the County's MDNS void, but allowed other County decisions related to this project to remain effective.

Puyallup appeals, arguing that the superior court's order is inconsistent with this court's opinion and asks us to hold that *all* County decisions on the project are void *ab initio*, and that the entire application process must start anew.

We conclude that neither the superior court's order, nor Puyallup's proposed order, correctly states the law. Accordingly, we reverse and remand for further proceedings.

FACTS

In 2014, Knutson Farms Inc. and Running Bear Development Partners LLC applied to Pierce County for approval of a warehouse and distribution facility bordering the City of Puyallup. *Pierce County*, 8 Wn. App. 2d 323. The project was within Puyallup's road and sewer infrastructure, and its approval was required for design elements pertaining to that infrastructure. *Id*. at 327. The County conducted its SEPA evaluation and issued an MDNS. *Id*. at 328.

Puyallup notified the County that it was assuming lead agency status, but the County refused to acknowledge Puyallup's jurisdiction over the project. *Id*. 329-30. The County subsequently approved the project's application. *Id*. at 330. Puyallup sued the County in superior court over the jurisdictional dispute. *Id*. The parties filed cross-motions for summary judgment, and the superior court granted the County's motion, ruling that Puyallup did not have jurisdiction to assume lead agency status. *Id*.

Puyallup appealed, and in its opinion, this court held that Puyallup had jurisdiction to assume lead agency status because the project application required approvals from Puyallup related to Puyallup's road and sewer infrastructure. *Id*. at 351-52. This court also held that an MDNS is equivalent to a DNS under WAC 197-11-948(1). *Id*. at 351. Before this court issued its opinion in that case, Puyallup separately appealed three decisions to the Pierce County Hearing Examiner under the County's administrative appeals procedure. First, Puyallup appealed the

4

54474-1-II

approval of the project's short plat. Second, Puyallup appealed the County's MDNS requesting that the County instead issue a DS. Third, Puyallup appealed the issuance of a permit to allow the project to construct a stormwater outfall into the Puyallup River. Such appeals were denied, and Puyallup appealed to the superior court under the Land Use Petition Act (LUPA), challenging multiple decisions within the County's short plat approval.

While the LUPA appeal was pending in superior court, this court, issued its opinion in *Pierce County*, which held that Puyallup could assume lead agency status. *See* 8 Wn. App. 2d 323. On remand to the superior court, both the County and Puyallup submitted proposed language for the order in the interest of establishing the legal effect of Puyallup assuming lead agency status. Puyallup's proposed order states:

> All County reviews, decisions, permits, and approvals related to the Knutson Farms project are null and void ab initio. The underlying review processes may be recommenced once the Final EIS is issued by the City of Puyallup. Until then, all County reviews, decisions, permits, and approvals for the Knutson Farms warehouse project are on hold.

CP at 44.

The County's proposed order states:

> Decisions by Pierce County based upon the MDNS issued for the Knutson Farms warehouse project are null and void, and the applications are returned to the status of pending applications. Pierce County shall issue no final decisions on the Knutson Farms warehouse project until an EIS is completed.

CP at 160.

The superior court adopted the County's order. Puyallup appeals the superior court's order.

ANALYSIS

I. STANDARD OF REVIEW

We review questions of law including statutory and regulatory interpretation de novo. *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 80, 90, 392 P.3d 1025 (2017).

5

II.     LEGAL PRINCIPLES OF SEPA

SEPA requires agencies to examine the environmental impacts of public and private projects prior to authorizing such projects. *Pierce County*, 8 Wn. App. 2d at 331. SEPA's regulatory framework designates a "lead agency" for projects, and such agency must conduct review of every project that may have an adverse environmental impact to determine the level of environmental impact analysis required to approve the project. *Id.*; WAC 197-11-050.

The lead agency makes a threshold determination deciding whether the project requires an EIS and preparation of such statement, if required. WAC 197-11-050(2); WAC 197-11-797; WAC 197-11-330. The lead agency documents the threshold determination in a DNS, a DS, or a MDNS. WAC 197-11-310; WAC 197-11-350.

Issuing a DS recognizes that the project will have "a probable significant adverse environmental impact." WAC 197-11-360. By contrast, a DNS recognizes that the project will not have a probable significant adverse environmental impact. WAC 197-11-340. Similarly, an MDNS recognizes that due to mitigations identified in the determination, the project will not have a probable significant adverse environmental impact. WAC 197-11-350. Neither a DNS nor an MDNS requires an EIS, but a DS does. WAC 197-11-360; WAC 197-11-402(1).

After the lead agency issues a DNS or MDNS, an agency with jurisdiction may, upon review, assume lead agency status. WAC 197-11-948; *Pierce County*, 8 Wn. App. 2d at 345. Assuming lead agency status places the new agency into the same position as the former lead agency, and the regulation states in relevant part that "all other responsibilities and authority of a lead agency under this chapter shall be transferred to the new lead agency." WAC 197-11-948(3). Additionally, the regulations command the new lead agency to issue a DS and "expeditiously prepare an EIS." WAC 197-11-948(2)-(3). Additionally, under WAC 197-11-390(2)(b), "[t]he

6

54474-1-II

responsible official's threshold determination: . . . Shall not apply if another agency with jurisdiction assumes lead agency status under WAC 197-11-948." Therefore, under the regulations, assuming lead agency status voids the prior lead agency's DNS or MDNS. WAC 197-11-390(2)(b); WAC 197-11-948(3).

A DNS or MDNS that fails to comply with SEPA is also void, and the lead agency that issued it must revisit the determination. *See Weyerhaeuser v. Pierce County*, 124 Wn.2d 26, 42, 873 P.2d 498 (1994) (holding an EIS was inadequate as a matter of law and therefore invalid and must be revised). Decisions based on a void determination are also void. *See King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 667, 860 P.2d 1024 (1993).

However, the regulations and case law do not envision the application process starting over completely. *See Weyerhaeuser*, 124 Wn.2d at 42, 47; *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 647, 632, 860 P.2d 390 (1993). In *Weyerhaeuser*, the court merely ruled that the inadequate EIS "must be revised." 124 Wn.2d at 47. The court did not hold or even imply that the existing reviews conducted as part of an inadequate SEPA process are also void.

Similarly, in *Klickitat County*, the court evaluated whether the lead agency violated SEPA when, per a court order invalidating the prior SEPA determination, it completed a revised EIS unusually quickly. 122 Wn.2d at 646-47. That court reasoned that the EIS was completed so quickly because the agency relied on information gathered in a prior process. *Id*. at 647. The court went on to conclude that the agency's use of such documents and reviews was "logical." *Id*. at 647.

The regulations similarly do not envision voiding all prior work conducted on a SEPA evaluation that has been voided. *See* WAC 197-11-948(2); WAC 197-11-070. Under WAC 197-

7

54474-1-II

11-948(2), upon an agency with jurisdiction assuming lead agency status, the regulation instructs that the new DS "shall be based only upon information contained in the environmental checklist attached to the DNS transmitted by the first lead agency." The entity empowered to issue a permit may make decisions throughout the application process so long as they do not "(a) Have an adverse environmental impact; or (b) Limit the choice of reasonable alternatives." WAC 197-11-070(1)(a)-(b).

By its nature, a DS overrides a prior MDNS and necessitates completing an EIS. *See* WAC 197-11-948(2). Therefore, when an agency assumes lead agency status and issues a DS, the prior agency's determination and decisions made in reliance on it are voided. But the regulations do not require courts to void non-SEPA related decisions, even if a court determines an EIS violates SEPA. *See Klickitat County*, 122 Wn.2d at 646-47. Nor does it prevent reliance on information gathered or reviews generated during the prior process. *Id*.

III.     PARTIES' PROPOSED ORDERS ARE LEGALLY ERRONEOUS

Puyallup argues that the appealed superior court order fails to reflect this court's prior decision in the case. The County asserts that it does.

We conclude that the superior court's order (which was an adoption of the County's proposal) does not correctly state the legal effect of this court's prior holding, but that Puyallup's proposed order falls short as well because it is too broad. Puyallup argues that under WAC 197-11-390(2)(b), once it assumed lead agency status, the County's MDNS became void. It also argues that in *Pierce County*, 8 Wn. App. 2d 323, this court determined the County violated SEPA and that this necessarily voids *ab initio* all "reviews, decisions, permits, and approvals" made by the

8

54474-1-II

County during the application process.[1]  Br. of Appellant at 15.  The County concedes that its MDNS is void, but argues that only its decisions that were made in reliance on the MDNS and implicate SEPA are void.

As asserted by the parties, and according to WAC 197-11-390(2)(b), the MDNS became void when Puyallup assumed lead agency status.  *See* WAC 197-11-390(2)(b); WAC 197-11-948(2).[2]  However, the authorities do not support Puyallup's broader claim that all of the County's "reviews, decisions, permits, and approvals" on the project are void *ab initio* upon it assuming lead agency status.  Br. of Appellant at 15.  Rather, the case law and regulations demonstrate that reliance on decisions and reviews from a prior SEPA process, like those Puyallup wants voided, is logical and even required.  *See Weyerhaeuser*, 124 Wn.2d at 47; *Klickitat County*, 122 Wn.2d at 647; WAC 197-11-948(2); WAC 197-11-070.  Neither the regulations nor the case law support the scorched earth approach Puyallup included in its proposed order.  Because such order is contrary to law, we refuse to instruct the trial court to adopt it.

Still, the trial court erred in adopting the County's order.  In their arguments, neither party identifies a core problem with the order: while stating that all decisions based on its MDNS are void, it fails to state that the MDNS itself is void.  This failure renders the order deficient.

---

[1] Puyallup fails to define "reviews, decisions, permits, and approvals" in its proposed order, therefore it is unclear whether the language refers to specific actions identified in the regulations or whether it uses those words under their plain meaning.  Likewise, its argument that the County's decisions are void *ab initio* is also unclear since its fails to identify which decisions will remain intact now that the MDNS is void.

[2] Puyallup also argues that the MDNS is void because this court held the County violated SEPA.  Br. of Appellant at 12-14.  However, the opinion of this court is narrower than Puyallup asserts.  In *Pierce County*, this court ruled that Puyallup had jurisdiction to assume lead agency status after the County issued an MDNS.  *See* 8 Wn. App. 2d at 351-52.  The record and this court's prior decision do not support Puyallup's claims that the County violated SEPA.

9

54474-1-II

IV.    OUR DECISION DOES NOT IMPACT THE SEPARATE LUPA APPEAL

Puyallup argues that all county decisions made after the County issued the MDNS, even those unrelated to SEPA and those within its LUPA appeal, should be combined with this appeal and held void to avoid piecemeal litigation.  Puyallup urges this result, arguing that under RCW 43.21C.075(6)(c), SEPA mandates such result.  We disagree.

RCW 43.21C.075(6) applies to appeals of decisions made by an agency.  It states in relevant part:

> (6)(a) Judicial review under subsection (5) of this section of an appeal decision made by an agency under subsection (3) of this section shall be on the record, consistent with other applicable law.
>
> . . . .
>
> (c) Judicial review under this chapter shall without exception be of the governmental action together with its accompanying environmental determinations.

RCW 43.21C.075(6).

In *Gray's Harbor*, the court examined the legality of a DS and the related government's grant of a permit based on that DS.  122 Wn.2d at 249.  The court concluded that under RCW 43.21C.075(6)(c), both the DS and the government's action relying on such DS (the permit) should be considered together.  *Id*. at 250-51.

Puyallup attempts to apply RCW 43.21C.075(6)(c) here by reframing the issues before us. Contrary to its claim, we are not analyzing the validity of an environmental determination or a government action.  Puyallup attempts to combine this appeal with its ongoing LUPA case, but the subjects of that case—the County's reviews, decisions, permits, and approvals about the project—are not properly before us.  This case was also not an appeal of the County's project

10

54474-1-II

approval, or any other government action.  Rather, the issue before us is whether the superior court's order complies with our prior mandate.

Puyallup has properly challenged the County's subsequent reviews, decisions, permits, and approvals before the superior court in its LUPA appeal, and it must await that court's decision. We conclude that RCW 43.21C.075(6)(c) is simply inapplicable here and that Puyallup's LUPA claims are not properly before us.

CONCLUSION

We conclude that neither party's order correctly states the law because the County's adopted order failed to state that the MDNS was void, and Puyallup's order was overly broad. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

_____
Veljacic, J.

We concur:

_____
Glasgow, A.C.J.

_____
Cruser, J.

11